McIlvaine, J.
The 9th section of the act to regulate the election of state and county officers, passed May 3, 1852, provides, “ That each elector shall, in full view, deliver to one of the judges of the election, a single ballot or piece of paper, on which shall be written or printed the names of the persons voted for, with a pertinent designation of the office which he or they may be intended to fill.”
Section 2 of the supplementary act of May 5,1868, as. amended March 21, 1874 (71 Ohio L. 31), provides, “ That all ballots, voted at any election held in pursuance of law, shall be written on plain, white paper, or printed with black ink, with a space of not less than one-fifth of an inch between each name, on plain, white news printing paper, without any device or mark of any description to distinguish one ticket from another, or by which one ticket may be known from another by its appearance, except the words at the head of the ticket; and whenever any ballot, with a certain designated heading, shall contain printed thereon, in place of another, any name not found on the regular ballot having such heading, such name so found shall be regarded by the judges of election as having been placed there for the purpose of fraud, and said ballot shall not count for the name so found; and it shall be unlawful for any person to print, for distribution at the polls, or distribute to any elector, or knowingly to vote any ballot printed or written contrary to the provisions of this act: provided that nothing herein contained shall be construed to prohibit the erasure, correction, or insertion of any name *591 By pencil mark or with ink upon the face of the printed ballot.”
The contestor claims that the 603 ballots, headed “ Republican State Ticket,” or “Democratic State Ticket,” wherein the name of Truesdale was printed under the subheading of “ County Removal Ticket,” should not have been counted for him, under the rule established in the .second clause of section 2, above recited.
The propriety of excluding from the count fraudulent votes is conceded by all. We also concede the power of the legislature to declare a rule of evidence by which fraud in a particular case shall-be conclusively established, without inquiry into the fact whether it did or did not exist. Such rule is declared by this statute, and must be enforced. But in enforcing it great care should be taken lest it be .applied to a case not intended by the legislature, and thereby honest electors be disfranchised in the name of the law but contrary to its intention. Under this statute, in counting ballots, fraud is conclusively established “whenever any ballot with a certain designated heading shall contain, printed thereon in place of another, any name not found on the regular ballot having such heading.”
Now, some members of the court are of opinion that the phrase “ certain designated heading,” applies as well to words used on the ballot to designate each class of offices to be filled, as to the words at the head of the ballot or piece of paper delivered to a judge of the election; so that each ballot may be said to have several designated headings, as in the form of ballot No. 1, “Republican State Ticket,” used as descriptive of that part usually called the state ticket; “ Republican District Ticket,” to designate the district offices and candidates; and “ Republican County Ticket,” designating county offices and candidates therefor. If this construction be correct, it is then clear that all the ballots counted for defendant in error were properly counted. The record shows that all ballots having “ County Removal Ticket,” as a heading for the list of candidates *592 for county offices, contained the name of the defendant in error as the candidate for the office of prosecuting attorney.
While much may be urged in favor of this construction of the statute, yet other members of the court are inclined to believe that the phrase “ certain designated héading ” has reference only to words at the top of the “piece of paper,” as used to define “ a single ballot,” in the act of May 3, 1852, or “ at the head of the ticket,” in the sense in which these words are used in the first clause of the section under consideration, where they plainly mean the head of the ballot.
If this construction be the right one, it then becomes important to ascertain what is meant by the phrase, “ the regular ballot having such heading.” This phrase is intelligible only in the light of the history of parties in respect to the mode in which- candidates for office have been nominated and supported by party conventions and organizations. Electors, who entertain similar views upon matters-of public concern, whether of the state or its subdivisions, voluntarily organize themselves into a body or party for the purpose of promoting their interests by the election of persons to office who will cany out their views. Others of different views organize in like manner. Each party thus organized nominates candidates for the various offices to be filled by an election. A list of the nominations thus made by a party, when printed on a “piece of paper” to be voted by an elector, is unquestionably the “regular.ballot” referred to in this clause of the statute. And when certain words, designated by the party, are placed at the head of such list, as is usually done, to distinguish it from other ballots containing the names of other candidates, it then becomes a regular ballot, “ with a certain designated heading.”
It was in view of the usage of parties, in thus preparing and printing their ballots, that the legislature declared that “whenever any ballot with a certain designated heading shall contain printed thereon, in the place of another, any *593 name not found on the regular ballot having such heading,” such name shall not be counted.
The purposes intended were: 1. Tbe prevention of actual fraud, in procuring an elector to Vote unintentionally for a candidate whose name is not on the regular ballot of his party; and 2. To remove inducements for attempting such fraud, by declaring that a name so printed in a regular ballot, instead of the regular candidate, should not be counted. Such wrong and such remedy were the full measure of the legislative intention.
Now, the facts in this case are not substantially different from those above stated. The republican and the democratic parties had each made up its “regular ballots” for state, district, and county offices, through its state, district, and county organizations, and had placed at the head of its printed ballots certain words by which its ballots might be distinguished from the ballots of tbe other party. Thereupon certain electors within the county of Mahoning, for purposes local to the county, organized themselves into a third party, known as the “county removal party,” and nominated candidates for county offices, and placed at the head of the list the words “county removal ticket.” But, inasmuch as the membership of the county removal party was composed of republicans and democrats who still adhered to the state and district organizations of those parties, and desired to support their state and district candidates, and inasmuch as an elector could vote only “ a single ballot,” this third party adopted and printed for the use of its members ballots in the forms set out in the statement of the case as Nos. 3 and 4, in which they preserved the integrity of the republican and democratic forms for state and district offices, and attached thereto the “ county removal ticket.” The good faith of this transaction is not questioned, and we are all of opinion that it did not constitute the wrong which the legislature intended to remedy. It was not an offense for which the legislature intended to disfranchise an elector. The county removal party had the *594 right, for fair and honest purposes, to adopt not only the nominations of the other parties for state and district offices, but also the heading of their ballots. There is no exclusive right in a particular heading for ballots, although it may not be used for fraudulent purposes.
It matters not, therefore, which construction be placed on the statute, for by either it is found that the 603 ballots com.plained of were “ regular ballots ” within the meaning of the legislature. This conclusion is subject to a plain test. Suppose the name of Roller had been printed in one of these ballots instead of the name of Truesdale. There is no doubt that the judges of election should have regarded it as placed there for fraudulent purposes, and should have refused to count it.

Judgment affirmed.

Welch, C.J., White, Res, and Gilmore, JJ., concurred.